IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MARY TRIPLETT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 5215 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| STARBUCKS COFFEE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Triplett, ("Triplett") filed suit against her employer, defendant Starbucks Coffee ("Starbucks"), alleging employment discrimination and a hostile work environment. Specifically, Count I alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), for racial discrimination and disparate treatment; Count II alleges a hostile work environment; and Count IV [*sic*] alleges racial discrimination pursuant to 42 U.S.C. § 1981. Starbucks moves to dismiss the hostile work environment claim alleged in Count II for failure to exhaust administrative remedies and for failure to state a claim. For the following reasons, the Court grants Starbucks's Motion to Dismiss Count II with prejudice for failure to state a claim.

## STATEMENT OF FACTS

The following facts are taken from Triplett's Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See, Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

In April 2002, Triplett began work as a barista at a Starbucks located at 200 E. Randolph in Chicago where she was promoted eventually to shift supervisor. (Am. Compl. ¶ 8.) After approximately two years at the store on Randolph, Triplett was transferred to a Starbucks located at

68 E. Madison in Chicago, where she remained until her employment was terminated on August 14, 2009. (Am. Compl. ¶ 8.) Triplett alleges that she was terminated due to her race and that she was subjected to a hostile work environment. Starbucks sets forth several employee violations which it claims were the reasons for her discharge.

Nicole Lawrence ("Lawrence") is the store manager who fired Triplett. Lawrence became the store manager in December 2008. (Am. Compl. ¶ 10.) One month later, Lawrence commented that there were not as many black people in Boston, where she was from, as there were in Chicago. (Am. Compl. ¶ 11.)

On February 19, 2009, Triplett was unable to attend a store meeting due to illness. (Am. Compl. ¶ 12.) Triplett contacted her shift supervisor, Andrea Vaughn ("Vaughn"), who informed Lawrence that Triplett would not be attending the meeting. (Am. Compl. ¶ 13.) Lawrence, however, subsequently filed a Starbucks Corrective Action Form as a verbal disciplinary action against Triplett for missing the meeting and failing to inform Lawrence of her absence. (Am. Compl. ¶ 12.)

Triplett alleges that Lawrence repeatedly discriminated against black employees. For example, in June 2009, Lawrence initiated a store policy requiring Chicago Transit Authority ("CTA") employees, who were overwhelmingly African American, to make a purchase before being allowed to use the restroom. (Am. Compl. ¶ 14.) Starbucks employees who did not follow the policy were subject to disciplinary action. (Am. Compl. ¶ 14.) Also, in May and June 2009, two African American employees (Rosyln Nile and Renee Tullos) were terminated for tardiness. (Am. Compl. ¶ 15.) Lawrence, however, often excused the tardiness of white employees and often accommodated white employees by scheduling them for shifts later in the day. (Am. Compl. ¶ 15.) Then, on July 21, 2009, Triplett arranged for Maureen Wright ("Wright"), a white co-worker, to

cover a shift that she was unable to work. (Am. Compl. ¶ 17.) Wright arrived approximately one hour after the shift was scheduled to begin. (Am. Compl. ¶ 17.) On July 23, 2009, Lawrence filed a Starbucks Corrective Action Form as a written disciplinary action against Triplett for not fully covering her shift, though Wright was not disciplined for being one hour late. (Am. Compl. ¶¶ 16, 17.) The disciplinary action was taken against Triplett despite the fact that on July 11, 2009, Wright arrived one and a half hours late for a shift she agreed to cover for Jayce McCue ("McCue"), another white employee. (Am. Compl. ¶ 18.) Neither Wright nor McCue was issued a Starbucks Corrective Action Form for the gap in coverage of that shift. (Am. Compl. ¶ 19.) Similarly, on July 18, 2009, Wright was again one and a half hours late for a shift that she agreed to cover for Nicole Butler ("Butler"), another white employee. (Am. Compl. ¶ 20.) Neither Wright nor Butler was issued a Starbucks Corrective Action Form for the gap in coverage of that shift. (Am. Compl. ¶ 21.)

Finally, on August 2, 2009, Triplett allegedly left a door unlocked after closing the store. (Am. Compl. ¶ 22.) On August 11, 2009, Lawrence filed a Starbucks Corrective Action Form as a final written disciplinary action against Triplett. (Am. Compl. ¶ 22.) The Corrective Action Form cited the unlocked door on August 2, inconsistent closing procedures, and an "unwillingness to take ownership of [the] store's cleanliness." (Am. Compl. ¶ 22.) On August 14, 2009, Lawrence terminated Triplett's employment. (Am. Compl. ¶ 24.)

On October 21, 2009, Triplett filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), claiming discrimination based on race. On May 25, 2010, the EEOC issued a Dismissal and Notice of Right to Sue. On August 18, 2010, Triplett filed a *pro se* Complaint. The Court then appointed counsel to Triplett, who filed an Amended Complaint on April 14, 2011.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id*. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.* A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

## DISCUSSION

Starbucks moves to dismiss Count II of Triplett's Amended Complaint for failure to exhaust her remedies and failure to state a claim. The Court considers each argument in turn.

### I. Failure to Exhaust Administrative Remedies

The scope of a judicial proceeding subsequent to an EEOC charge "is limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (noting that the limitation is not jurisdictional but is a condition precedent to recovery). "To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge,"

4

the Court must decide whether "the allegations are like or reasonably related to those contained in the [EEOC] charge." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). The EEOC charge and the complaint must, at minimum, "describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (emphasis in original). The pertinent inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003). Where the allegations of a complaint "can be reasonably inferred from the facts alleged in the charge," the allegations are within the scope of the EEOC charge. *Id*. "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek*, 31 F.3d at 503.

Here, Triplett filed her Charge with the EEOC on October 21, 2009, checking the box indicating that the alleged discrimination she suffered was based on race. (Am. Compl. Ex. B.) The narrative attached to the Charge states that she was treated and disciplined differently than similarly situated non-African American employees. Triplett did not raise a hostile work environment claim until she filed her Amended Complaint. As such, Triplett may only proceed on her hostile work environment claim if she can demonstrate that the EEOC investigation into her original Charge would have led it to a hostile work environment claim. *See Ajayi*, 336 F.3d at 527. To that end, Triplett asks the Court to consider a letter that she mailed to the EEOC on the same day that she filed her charge.

### A. Letter Mailed to EEOC

Triplett's letter is outside the body of the charge and, as such, may be considered only if it

is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502. Generally, these outside documents comprise sworn affidavits or attachments to the charge itself. *See Box v. A & P Tea Co.*, 772 F.2d 1372, 1375 (7th Cir. 1985). Courts, however, may also look to allegations made in an accompanying letter that a plaintiff sent to the EEOC as long as the letter "clarif[ies] and amplif[ies] allegations" made in the charge. *Cheek*, 31 F.3d at 502 (treating a handwritten letter as an amendment to the EEOC charge). The additional allegations "cannot expand the scope of the allegations in [the] original charge; they only may 'clarify or amplify' the allegations in the charge." *Id*. at 503.

Here, Triplett submitted a six-page letter to the EEOC on the same day that she filed her Charge. The Court therefore considers Triplett's letter as an amendment to her Charge to the extent that the details of her letter clarify or amplify her EEOC allegations. *See id*. Triplett's letter describes in detail several interactions with her manager, Lawrence, with specific reference to instances where Triplett believed she was treated and disciplined differently than non-African American employees. Triplett's letter also described Lawrence's comment about the number of African Americans in Chicago as compared with Boston and Lawrence's rule that CTA employees must purchase goods before being allowed to use the restrooms.

The details in Triplett's letter regarding her disciplinary interactions with Lawrence clarify and amplify the statement in her Charge that she was "subjected to discipline for actions that similarly-situated non-Black employees were not disciplined." For example, Triplett provides the specific dates that she was disciplined by Lawrence and references, by name, the white employees who were not disciplined for similar conduct. Triplett also provides details about her interactions with Lawrence and Lawrence's treatment of other African American employees. As such, the

6

allegations in Triplett's letter regarding her disciplinary history clarify and amplify the allegations in her Charge and will be considered by the Court.[1]

Therefore, the Court will consider Triplett's letter to the extent that it clarifies the allegations in her Charge.

**B.     Reasonably Related**

The Court finds that an investigation into Triplett's racial discrimination claims would likely lead to evidence of a hostile work environment claim because they are reasonably related and involved the same conduct and the same individuals. *See Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976); *see, e.g.*, *Brindley v. Target Corp.*, 761 F. Supp. 2d 801, 806-07 (N.D. Ill. 2011) (noting that "it is certainly likely" that in investigating plaintiff's assertions of age discrimination and continual employment deprivations the "EEOC would have come to understand that the claimed continual deprivations could equate to a hostile work environment claim."); *Geist v. Glenkirk*, 2001 WL 1268574 at *5 (N.D. Ill. Oct. 23, 2001) (Lindberg, J.) (finding that the EEOC's investigation into plaintiff's sex discrimination claim was likely to lead to a hostile work environment claim because the same incident was used to allege both claims).

Here, Triplett's allegations against Lawrence, as detailed in her letter, relate to the same treatment that Triplett described in her Charge—being treated differently than similarly situated white employees because of her race. In short, Triplett's hostile work environment claim implicates

---

[1] The Court need not address whether the allegations in Triplett's letter regarding Lawrence's comment about the number of African Americans in Chicago or Lawrence's rule that CTA employees must purchase goods before using the restrooms clarify and amplify the allegations in Triplett's Charge because, for the reasons stated below, those allegations clearly fail to state a hostile work environment claim. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 551-52 (7th Cir. 2002) ("We see no need to parse through [plaintiff's] procedural arguments because, even if there were no procedural hurdles to prevent us from considering this claim, [plaintiff] cannot, as a matter of law, establish a hostile work environment.").

the same individual—Lawrence—for the same conduct—discriminating against her based on race. *See, e.g., Geist*, 2011 WL 1268574 at *5 ("allegations in a complaint must describe the same conduct and implicate the same individuals as allegations in the EEOC charge."). Accordingly, the Court finds Triplett's hostile work environment claim related to the discrimination claim alleged in her Charge and denies Starbucks's Motion to Dismiss for failure to exhaust.

## II. Hostile Work Environment

Having found Triplett's hostile work environment claim to be properly before it, the Court next considers Starbucks's Motion to Dismiss Count II for failure to state a claim.

A hostile work environment is one in which the harassment is sufficiently "severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). The working environment must be both subjectively and objectively offensive to survive a claim for hostile work environment. *See Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004). An objectively offensive workplace is one in which a reasonable person would find it hostile or abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). A subjectively offensive workplace is one in which the victim perceives the environment to be abusive. *See id*. The Court looks at all of the circumstances in determining whether the work environment is hostile. *See id*. at 23. Those circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Here, Triplett's Amended Complaint alleges that she suffered a hostile work environment based upon the following: one racially insensitive comment; a store policy requiring CTA employees

to buy goods before being permitted to use the restroom; and two racially-based disciplinary actions, where she was disciplined more severely than similarly situated white employees. Although each of these incidents may be evidence of discrimination in the workplace, they do not constitute harassment so "severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell*, 400 F.3d at 1047.

Lawrence's comment about the number of African Americans in Chicago and Boston does not create a hostile work environment. Although the comment may have been insensitive and inappropriate for the workplace, a mere offensive utterance does not raise the level of harassment to severe or pervasive. *See Harris*, 510 U.S. at 21; *Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) ("Title VII is not . . . a general civility code and will not find liability based on the sporadic use of abusive language.") (internal quotations and citation omitted); *Ezell*, 400 F.3d at 1048 (Postmaster's comments regarding age, sex, and race, such as "men are lazy and 'want to milk all the overtime they can get,'" were rude and inappropriate, but not severe and pervasive). Moreover, Lawrence's comment was an isolated occurrence and was not directed at Triplett. *See Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (declining to find discrimination where allegedly offensive comments were not made to plaintiff). Therefore, Lawrence's comment did not create a hostile work environment. *See id.* (finding workplace comments "unenlightened, but isolated" and noting that "as to offensive comments, we have said that 'isolated and innocuous incidents will not support a hostile work environment claim.'") (citation omitted).

Nor is Triplett able to state a hostile work environment claim based upon a revised store policy requiring all CTA employees, most of whom were African-American, to make a purchase

9

before being allowed to use the restroom. Triplett does not allege that the revised policy had a direct impact on her and, as such, the Court treats her allegation about CTA employees to be an allegation of "second-hand" harassment, the impact of which is "obviously not as great as the impact of harassment directed at the plaintiff." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) (internal quotations and citation omitted). Triplett fails to allege that the restriction on CTA employees was unreasonable or that employees of other organizations were allowed to use the Starbucks restroom without first making a purchase. *See, e.g., Ballatore v. Fairmont Hotels & Resorts, Inc.*, 2004 WL 419907 at *9 (N.D. Ill. Feb. 25, 2004) (Pallmeyer, J.) (relief denied where "[t]he 'harassment' Plaintiff complains of . . . consists of little more than enforcement of reasonable workplace rules"). Therefore, the policy towards CTA employee restroom usage did not create a hostile work environment.

### A. Disciplinary Actions

Triplett sets forth two instances in her Response brief to Starbucks's Motion to Dismiss where Lawrence disciplined her for actions that similarly situated white employees were not disciplined for. Specifically, Triplett alleges that she was disciplined for not attending a meeting even though she gave notice that she would be absent and that she was disciplined when a white employee was late covering for Triplett's shift but that white employees were not disciplined for similar instances of tardiness.

As an initial matter, Triplett does not allege that white employees who missed mandatory meetings were not given verbal disciplinary notices. Moreover, disciplining employees who violate store policy—by, for example, missing meetings and arriving late to work—does not constitute a hostile work environment. *See, e.g., Ballatore*, 2004 WL 419907 at *9 (enforcement of reasonable

10

workplace rules does not constitute a hostile work environment). Nor does the Court find that the two disciplinary actions over the course of six months—one February 2009 verbal disciplinary action and one July 2009 written disciplinary action—constitute severe or pervasive treatment. *See, e.g.*, *Adams v. City of Chi.*, 706 F. Supp. 2d 863, 880 (N.D. Ill. 2010) ("Measured discipline for legitimate rules violations and a single angry outburst does not constitute severe or pervasive conduct.").

Triplett does not dispute that she committed the violations that she was disciplined for—missing a meeting and failing to have someone cover her shift. In addition, Triplett alleges that she consistently "met Starbucks' legitimate expectations for her performance and the performance of the Chicago store, and performed her job in a satisfactory manner." (Am. Compl. ¶ 30.) As such, Triplett, does not allege that her workplace was sufficiently hostile to interfere with her work performance. *See See Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004) (noting that a supervisor's alleged harassing conduct did not interfere with plaintiff's ability to do her job and therefore weighed against a finding of a hostile work environment) (citation omitted); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806-07 (7th Cir. 2000) (courts may consider whether the allegedly hostile work environment "unreasonably interferes with an employee's work performance") (citations omitted).

Accordingly, Triplett cannot maintain a hostile work environment claim based on allegations that she was, on one occasion, disciplined more severely than white employees for violating store policies.[2] *See, e.g.*, *Glebocki v. City of Chi.*, 32 Fed App'x 149 at *4 (7th Cir. 2002) (finding that supervisor's conduct—which allegedly included closely scrutinizing plaintiff's behavior; initiating numerous disciplinary investigations against plaintiff; and recommending unusually harsh discipline against plaintiff—may have "inconvienc[ed]" plaintiff but "did not create an objectively hostile

---

[2] Triplett does not allege that white employees were not disciplined for missing meetings.

work environment."). Nor can Triplett maintain a hostile work environment claim based on an unfavorable work schedule. *See Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (noting that an employer's "decision to change [plaintiff's] working hours certainly does not rise to the level of an adverse employment action.").

Triplett has not sufficiently alleged that she was forced to endure a hostile work environment. While Triplett's allegations may be sufficient to state a discrimination claim, they do not rise to the level of severe or pervasive conduct that altered her working conditions. As such, the Court grants Starbucks's Motion to Dismiss Count II for failure to state a claim.

### CONCLUSION AND ORDER

For the reasons stated, the Court grants Starbucks's Motion to Dismiss Count II with prejudice for failure to state a claim.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 26, 2011